IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SHELDON PIERCE,

          Petitioner,

    v.                            CASE NO. 2:05-cv-392
                                     JUDGE SARGUS
                                     MAGISTRATE JUDGE KING

PAT HURLEY, Warden,
Ross Correctional Institution,

          Respondent.


ORDER and
REPORT AND RECOMMENDATION

      Petitioner, a state prisoner, brings the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  This matter is before the Court on the instant petition, respondent's return of writ, petitioner's traverse, and the exhibits of the parties.  For the reasons that follow, petitioner's request for a stay of proceedings, Doc. No. 17, is **DENIED;** his motion to amend the petition, Doc. No. 6, is **GRANTED**; further, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

I.  FACTS AND PROCEDURAL HISTORY

      The Tenth District Court of Appeals has summarized the facts and procedural history as follows:

> In this consolidated appeal, defendant, Sheldon O. Pierce, appeals from two judgments of the Franklin County Court of Common Pleas. In appellate case No. 02AP-1133, Pierce appeals from a judgment finding him guilty of aggravated robbery with specifications, two

counts of robbery with specification, and one count of having a weapon under disability. In appellate case No. 02AP-1134, Pierce appeals from a judgment finding him guilty of four counts of robbery, two of which were felonies of the second degree and two of which were felonies of the third degree.

According to the state's evidence, Pierce was involved in two criminal incidents. On February 9, 2001, Jennifer Owens received a federal income tax return check. She cashed the check during her workday at Financial Healthcare. Owens placed one-half of the cash in her purse and one-half of the cash in a front pocket in her cargo pants. She finished her work at Financial Healthcare at approximately 4:30 p.m. and left the building. Owens walked to a parking lot where she had parked her car earlier that day. As she was approaching the back of her car, she observed Pierce coming out of the bushes near her car. Owens was concerned for her safety so she quickly entered her car and used her automatic locks to secure all four doors of her car. Pierce approached the driver-side window of Owens' car. He brandished a gun. According to Owens, Pierce pointed the gun toward her such that if the gun had discharged, Owens would have been struck in the leg. (Tr. Vol.III, 139.)

Pierce shouted at Owens to open the door and give him her money. Karen Wingler, a former co-worker of Owens, observed the situation. Wingler got out of her car and moved toward Pierce. Pierce was startled and ran away. The Columbus Police Department was contacted and investigated the crime scene.

On February 14, 2001, Kathy Cornell, who suffers from a neuromuscular disorder, was cashing her disability check at Checksmart. As she departed Checksmart, Pierce knocked her to the ground and took most of her money. Patricia Schwiebert, who was waiting in a car outside of Checksmart for Cornell, observed Cornell being attacked. Schwiebert attempted to defend her friend. Pierce slammed Schwiebert to the sidewalk. Schwiebert was cut on her forehead and required nine stitches to close the cut; she also sustained lasting neurological damage.

On December 13, 2001, Pierce was indicted by the Franklin County Grand Jury on four counts of robbery in case No. 01CR-12-7234 (appellate case No. 02AP-1134). On March 5, 2002, Pierce was indicted by the Grand Jury on one count of aggravated robbery, two counts of robbery and one count of having a weapon under disability

2

in case No. 01CR-03-1299 (appellate case No. 02AP-1133).

The trial court granted a motion to consolidate case Nos. 01CR-12-7234 and 01CR-03-1299. In case No. 01CR-03-1299, the jury found Pierce guilty of aggravated robbery with specification, a felony of the first degree; one count of robbery with specification, a felony of the second degree; and one count of robbery with specification, a felony of the third degree. The charge of having a weapon while under disability, a felony of the fifth degree, was tried by the court, who found Pierce guilty of this charge. The trial court sentenced Pierce to a ten-year prison term, with an additional three-year prison term to be served consecutively for the gun specification. The trial court also ordered the sentence in case No. 01CR-03-1299 to be served consecutively to the sentence in case No. 01CR-12-7234. In case No. 01CR-12-7234, the jury found Pierce guilty of two counts of robbery, felonies of the second degree, and two counts of robbery, felonies of the third degree. The trial court sentenced defendant to a 16-year prison term.

Exhibit 38 to Return of Writ.  Represented by new counsel, petitioner filed a timely appeal.  He asserted the following assignments of error:

1.  The trial court erred and deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article One Section Ten of the Ohio Constitution by finding appellant guilty of a firearm specification as the verdict was not supported by sufficient evidence and was also against the manifest weight of the evidence.

2.  The trial court erred and deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article One Section Ten of the Ohio Constitution by finding appellant guilty of aggravated robbery as the verdict was not supported by sufficient evidence and was against the manifest weight of the evidence.

3.  The trial court erred and deprived appellant of due process of law as guaranteed by the United States and Ohio Constitutions by finding appellant guilty of aggravated robbery as the state failed to prove proper venue beyond a reasonable doubt.

3

> 4. The trial court erred to the prejudice of the appellant by
> improperly sentencing him to consecutive terms of actual
> incarceration in contravention of Ohio's sentencing statutes.

Exhibit 35 to Return of Writ. Petitioner filed an additional *pro se* brief, in which he asserted as

follows:

> Judge allowed a juror to stay after she said she recognized Patricia
> Schwiebert from a seminar for physical therapy.

> Judge denied me my right to represent myself.... He denied me the
> right to an identification expert... He also said I should not have
> Roland Wormley present because my attorney said it was bad
> judgment. Thr[ew] out motion to suppress identification, which was
> critical to the case.

Exhibit 36 to Return of Writ. On August 7, 2003, the appellate court affirmed the judgment of the

trial court. Exhibit 38 to Return of Writ. Proceeding *pro se*, petitioner filed a timely appeal of the

appellate court's decision to the Ohio Supreme Court. He raised the following proposition of law:

> Whether a victim's attendance at an unrelated hearing for the purpose
> of identification is unnecessarily suggestive after the victim could not
> identify the appellant during a photo array and whether such conduct
> is violative of the appellant's Fourteenth Amendment rights under the
> United States Constitution.

Exhibit 39 to Return of Writ. However, petitioner thereafter filed a request for dismissal of his

appeal, which motion was granted on October 31, 2003. Exhibits 41, 42 to Return of Writ. On

October 30, 2003, petitioner filed a *pro se* application for reopening of his appeal pursuant to Ohio

Appellate Rule 26(B). He asserted the ineffective assistance of counsel due to his attorney's failure

to raise the following issues on appeal:

> 1. The trial court judge abused its discretion when it failed to

4

suppress the identification of Mr. Pierce as the robber by the in-court identification of Ms. Cornell and Ms. Schweibert.

2.  The defendant did not receive the effective assistance of counsel as afforded him by the Sixth Amendment in violation of the Fourteenth Amendment to the United States Constitution and in violation of Section 10, Article 1 of the Ohio Constitution.

3.  The State violated the defendant's Sixth Amendment right to counsel by the in-court identification by Ms. Cornell and Ms. Schweibert's incorporal [sic] identification conducted at the most critical stage of the prosecution and initiated the adversary [sic] judicial criminal proceeding, in the [a]bsence of informing counsel who was there, including the violation of the Fourteenth Amendment right to a fair trial.

4.  The trial court abused its discretion when it allowed the tainted identification of Jennifer Owens and violated the defendant's Fourteenth Amendment right to due process when the defendant was not afforded a right to a fair trial.

Exhibit 43 to Return of Writ.  On March 16, 2004, the state appellate court denied petitioner's claims as barred under the doctrine of *res judicata*.  Exhibit 50 to Return of Writ.  Petitioner filed a timely appeal of the appellate court's decision to the Ohio Supreme Court.  He asserted the following proposition of law:

The Court of the Tenth District violated the due process guarantees of the Ohio Constitution and the United States Constitution [by dismissing petitioner's claims on the basis of *res judicata*.]

Exhibit 51 to Return of Writ.  On May 26, 2004, the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question.  Exhibit 53 to Return of Writ.

On April 15, 2005, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  He alleges that he is in the custody of the respondent in violation of

5

the Constitution of the United States based upon the following grounds:

> 1.  Abuse of the court's discretion and ineffective assistance of counsel regarding false identification of petitioner.

> Petitioner's constitutional rights.... were violated... when the trial court abused its discretion first by ordering defense counsel to defend petitioner after defense counsel requested to be removed due to the conflict between petitioner and counsel, the court stating, "We are not going to pay for another attorney," ... depriving petitioner of advocate counsel [and] second, when the court permitted clearly illegal suggestive and tainted identification when... court appointed counsel refused, after much begging, to defend petitioner against the court's illegal suggestive and tainted identification.

> 2.  Manifest injustice to sustain the verdict of guilty with no viable evidence, physical or circumstantial.

On June 27, 2005, petitioner filed a motion to amend the petition, which motion has been granted,

to assert as follows:

> 1.  The trial court judge erred, failed to suppress the identification testimony of Ms. Cornell and Ms. Schwiebert and Jennifer Owens by clear and convincing suggestive procedures brought on by State action, all in violation of the Fourteenth Amendment to the United States Constitution.

> 2.  The State denied the defendant the right to counsel by pre-trial in-court identification by Ms. Cornell and Ms. Schwiebert incorporal [sic] identification conducted at the most critical stage, initiation of adversary judicial criminal proceedings in the absence of informing the petitioner's counsel, thus in violation of the Fourteenth and Sixth Amendment rights to counsel and a fair trial.

> 3.  The trial court erred and deprived petitioner of due process of law as guaranteed by the Fourteenth Amendment by finding petitioner guilty of a firearm specification as the verdict was not supported by sufficient evidence and was also against the manifest weight of the evidence.

4. Petitioner did not receive the effective assistance of trial counsel and appeal counsel as afforded him by the Sixth Amendment in violation of the petitioner's Fourteenth Amendment right to a fair trial, and in violation of Section 10, Article I, of the Ohio Constitution.

5. The trial court erred and deprived petitioner of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution, by finding petitioner guilty of aggravated robbery as the verdict was not supported by sufficient evidence and was against the manifest weight of the evidence.

6. The trial court erred to the prejudice of the petitioner by improperly sentencing him to consecutive terms of actual incarceration.

Because all of the claims in petitioner's initial petition are also again included in petitioner's amended petition, the Court will refer to petitioner's claims as presented and clarified in his amended petition.

It is the position of the respondent that all of petitioner's claims are procedurally defaulted or without merit.

## II. EXHAUSTION

In his traverse, petitioner states that he "concedes to claims three, five, and six," and that he abandoned "said claims in his appeal to the Ohio Supreme Court." *Traverse*, at 1. Thus, petitioner appears to have withdrawn such claims from federal habeas corpus review. The Court notes, however, that for reasons discussed *infra* claims three and five appear to be unexhausted, as it appears that petitioner still may raise such claims in a delayed appeal before the Ohio Supreme Court.

Before a federal habeas court may grant relief, a state prisoner must exhaust his available remedies in the state courts. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993). If a habeas petitioner has the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. §2254(b), (c). Moreover, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the exhaustion requirement. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). Where alternative state remedies are available to consider the same claim, exhaustion of only one of these remedies is all that is necessary. *Keener v. Ridenour*, 594 F.2d 581, 584 (6th Cir. 1979). A habeas petitioner bears the burden of demonstrating that he has properly and fully exhausted his available state court remedies with respect to the claims he seeks to present for federal habeas review. *Prather v. Rees*, 822 F.2d 1418, 1420 n.3 (6th Cir. 1987).

In claim one, petitioner asserts that he was denied a fair trial due to unduly suggestive identification testimony. This claim is readily apparent from the face of the record, and was raised properly on direct appeal; however, although petitioner filed a timely notice of appeal of the appellate court's decision denying his claim with the Ohio Supreme Court, he thereafter requested a voluntary dismissal of the appeal without prejudice. *See* Exhibit 41 to Return of Writ. On October 31, 2003, the Ohio Supreme Court granted petitioner's request as follows:

> This cause is pending before the Court as a discretionary appeal and a claimed appeal of right. Upon consideration of appellant's application for dismissal,
>
> IT IS ORDERED by the Court that the application for dismissal be, and hereby is, granted.
>
> ACCORDINGLY, IT IS FURTHER ORDERED by the Court that

8

this cause be, and hereby is, dismissed.

Exhibit 42 to Return of Writ.  Thus, it appears that petitioner may still seek a motion for delayed

appeal with the Ohio Supreme Court pursuant to Ohio Supreme Court Rule of Practice II, Section

2(A)(4)(a):

> (4)(a) In a felony case, when the time has expired for filing a notice
> of appeal in the Supreme Court, the appellant may seek to file a
> delayed appeal by filing a motion for delayed appeal and a notice of
> appeal. The motion shall state the date of entry of the judgment being
> appealed and adequate reasons for the delay. Facts supporting the
> motion shall be set forth in an affidavit. A copy of the court of
> appeals opinion and the judgment entry being appealed shall be
> attached to the motion.

Petitioner appears to argue that claim one was properly presented to the state courts in his

application to reopen the appeal pursuant to Ohio Appellate Rule 26(B).  *See Traverse*.  However,

the state courts will consider only claims of ineffective assistance of appellate counsel in 26(B)

proceedings.  The Court therefore concludes that not all claims asserted in this action are exhausted.

The Court also notes that, although this action was filed prior to the expiration of the one-

year statute of limitations under 28 U.S.C. §2244(d),  a re-filing of the habeas corpus petition at a

later date would be untimely.   The Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA") imposes a one-year statute of limitations on the filing of §2254 petitions.  28 U.S.C.

§2244(d)(1) provides:

> (d)(1) A one-year period of limitation shall apply to an application
> for a writ of habeas corpus by a person in custody pursuant to the
> judgment of a state court. The limitation period shall run from the
> latest of -
>
> (A) the date on which the judgment became final by the conclusion
> of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

*Id.*

As noted *supra*, on October 31, 2003, the Ohio Supreme Court granted petitioner's request for dismissal of his appeal.  On October 30, 2003, petitioner filed an application to reopen his appeal pursuant to Ohio Appellate Rule 26(B).  Such action was pending in the state courts until May 26, 2004, when the Ohio Supreme Court dismissed petitioner's appeal.  Therefore, petitioner's conviction became final in August 2004, when the time period expired to file a petition for a writ of *certiorari* to the United States Supreme Court.  *See Allen v. Achaeans*, 366 F.3d 396, 400 (6th Cir. 2004).  The statute of limitations expired one year later, in August 2005.  Petitioner timely filed the instant habeas corpus petition in April 2005; however, the statute of limitations is not tolled during the time that a federal habeas corpus petition is pending.  *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001).  Thus, the statute of limitations has long since expired.

This Court must therefore consider whether a stay of proceedings, rather than dismissal of this action in its entirety, is appropriate.

10

> In *Palmer v. Carlton,* 276 F.3d 777 (6th Cir.2002), [the United States
> Court of Appeals for the Sixth Circuit] adopted a stay and abeyance
> procedure for habeas petitions that raise both exhausted and
> unexhausted claims. The exhausted portions of these petitions were
> to be stayed while the petitioner returned to state court. These stays
> were to be conditioned upon the petitioner's pursuing state court
> remedies within a brief interval, normally 30 days, after the stay is
> entered and returning to federal court within a similarly brief interval,
> normally 30 days after state court exhaustion is completed.

*Griffin v. Rogers,* 399 F.3d 626, 628 (6th Cir. 2005). The United States Supreme Court has

recognized a District Court's authority to stay proceedings in federal habeas corpus proceedings,

rather than dismiss such actions as unexhausted. *Rhines v. Weber*, – U.S. –, 125 S.Ct. 1528, 1534

(2005). The Supreme Court held:

> [S]tay and abeyance should be available only in limited
> circumstances. Because granting a stay effectively excuses a
> petitioner's failure to present his claims first to the state courts, stay
> and abeyance is only appropriate when the district court determines
> there was good cause for the petitioner's failure to exhaust his claims
> first in state court. Moreover, even if a petitioner had good cause for
> that failure, the district court would abuse its discretion if it were to
> grant him a stay when his unexhausted claims are plainly meritless.
> *Cf.* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas
> corpus may be denied on the merits, notwithstanding the failure of
> the applicant to exhaust the remedies available in the courts of the State").
>
> Even where stay and abeyance is appropriate, the district court's
> discretion in structuring the stay is limited by the timeliness concerns
> reflected in AEDPA. A mixed petition should not be stayed
> indefinitely.... Without time limits, petitioners could frustrate
> AEDPA's goal of finality by dragging out indefinitely their federal
> habeas review. Thus, district courts should place reasonable time
> limits on a petitioner's trip to state court and back. *See, e.g., Zarvela,*
> 254 F.3d, at 381 ("[District courts] should explicitly condition the
> stay on the prisoner's pursuing state court remedies within a brief
> interval, normally 30 days, after the stay is entered and returning to
> federal court within a similarly brief interval, normally 30 days after
> state court exhaustion is completed"). And if a petitioner engages in
> abusive litigation tactics or intentional delay, the district court should

11

not grant him a stay at all. *See id.,* at 380-381.

On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. In such circumstances, the district court should stay, rather than dismiss, the mixed petition. *See Lundy,* 455 U.S., at 522, 102 S.Ct. 1198 (the total exhaustion requirement was not intended to "unreasonably impair the prisoner's right to relief"). In such a case, the petitioner's interest in obtaining federal review of his claims outweighs the competing interests in finality and speedy resolution of federal petitions. For the same reason, if a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief. *See id.,* at 520, 102 S.Ct. 1198 (plurality opinion) ("[A petitioner] can always amend the petition to delete the unexhausted claims, rather than returning to state court to exhaust all of his claims").

*Id.*, at 1535.  In *Pace v. DiGuglielmo,* 125 S.Ct. 1807, 1814 (2005), the Supreme Court stated:

A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute "good cause" for him to file in federal court.

*Id.*

In this case, petitioner simply has failed to demonstrate good cause for his failure to exhaust state court remedies.  *See Hernandez v. Sullivan*, – F.Supp.2d –, 2005 WL 2979263 (C.D. Cal. October 24, 2005)(applying good cause standard of procedural default doctrine to determine whether good cause exists for a stay of proceedings):

To show "cause" for a procedural default, a petitioner ordinarily must show that the default resulted from an objective factor external to the

12

> petitioner which cannot fairly be attributed to him or her. *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (quoting *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)); *see High v. Ignacio,* 408 F.3d 585, 590 (9th Cir.2005).

*Id*. To the contrary, petitioner withdrew his timely appeal of claim one before the Ohio Supreme Court and instead chose to pursue his ineffective assistance of counsel claim in 26(B) proceedings.

Further, the record does not reflect that petitioner's unexhausted claim is potentially meritorious. *See Rhines v. Weber, supra*. Petitioner's allegation that he was denied a fair trial by unduly suggestive identifications may be procedurally defaulted. Petitioner failed to object at trial, and such claim was reviewed by the state appellate court for plain error only. *See* Exhibit 38 to Return of Writ; *Gulertekin v. Timmelman-Cooper*, 340 F.3d 415, 423 (6th Cir. 2003), citing *Paproki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989) and *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). In *Neville v. Dretke*, 423 F.3d 474, 480 (5th Cir. 2005), the United States Court of Appeals for the Fifth Circuit held that claims were "plainly meritless" for purposes of deciding whether to grant a stay of habeas corpus proceedings, where the petitioner was procedurally barred from raising his unexhausted claims in the state courts. Further, from review of the record, it does not appear that petitioner's allegations that he was denied a fair trial due to admission of unduly suggestive i d e n t i f i c a t i o n    t e s t i m o n y    i s    p o t e n t i a l l y    m e r i t o r i o u s .[1]

---

[1] The state appellate court rejected such claims as follows:

In a supplemental brief filed by Pierce, we understand his argument to be that the trial court improperly permitted the victim witness identification testimony of Jennifer Owens, Patricia Schwiebert, and Kathy Cornell. We disagree.

In *State v. Waddy* (1992), 63 Ohio St.3d 424, 438, 588 N.E.2d 819, superseded by state constitutional amendment on other grounds in *State v.* Smith (1997), 80 Ohio St.3d 89, 684 N.E.2d 668, citing *Neil v. Biggers* (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401, and *Manson v. Brathwaite* (1977), 432 U.S. 98, 97

S.Ct. 2243, 53 L.Ed.2d 140, the Ohio Supreme Court stated:

"When a witness has been confronted with a suspect before trial, due process requires a court to suppress her identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances." (Footnote omitted.) Before identification testimony is suppressed, the trial court must find that the procedure employed was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. *State v. Brust* (Mar. 28, 2000), Franklin App. No. 99AP-509, dismissed, appeal not allowed, 89 Ohio St.3d 1465, 732 N.E.2d 998, citing *State v. Blackwell* (1984), 16 Ohio App.3d 100, 103, 474 N.E.2d 671, citing *Neil, supra,* at 198.

The record does not contain any testimony that would lead a court to rule that the photographic array used by detectives to obtain a positive identification of Pierce as the attacker was unnecessarily suggestive. The photographic array shown to Owens consisted of six photocopies of a photographic original with instructions that the subject of the investigation may or may not be included in the photographs. (Tr. Vol.III, 292.) Owens testified that she did not view a single photograph before she viewed the array and she did not see a lineup before viewing the photograph array. (Tr. Vol.III, 293.) Owens testified that Detective Hall did not suggest that she pick any certain photo. Owens picked photograph number 2 of the photographic array, which was a photograph of Pierce, because she remembered his eyes. (Tr. Vol.III, 291, 294.) The testimony given by Owens does not indicate any unnecessary suggestiveness in the identification process and therefore the trial court ruled correctly in not suppressing her identification of Pierce.

As to Cornell and Schwiebert, they viewed a photographic array, which also consisted of photocopies of a photographic original. (Tr. Vol. III, 347-348; Tr. Vol. IV, 415-416 .) Cornell and Schwiebert were unable to definitely determine their attacker from the photographic array. (Tr. Vol. III, 349; Tr. Vol. IV, 416.) Schwiebert continued to contact Detective Franken to get information concerning their case. (Tr. Vol.III, 352.) Schwiebert and Cornell were told Pierce had been arrested in connection with the attack on them. Schwiebert, of her own volition, contacted the clerk of courts office and was told that Pierce had a scheduled court date. (Tr. Vol.III, 355.) Cornell and Schwiebert came to the courtroom for the hearing. Numerous other cases were also scheduled for hearing at that time, and they did not know when Pierce's case would be called. They had no reason to think Pierce would be first. According to their testimony, at no point during the hearing did they speak with an officer of the court, nor did they hear the name Sheldon Pierce announced during the proceedings. (Tr. Vol. III, 359; Tr. Vol. IV,

417-420.) However, when they observed Pierce being led into the courtroom, they immediately recognized Pierce as the man who attacked them. (Tr. Vol. III, 360; Tr. Vol. IV, 420.)

At the outset, we observe Pierce failed to object to the introduction of the identification testimony. Therefore, absent objection, Pierce must prove plain error. *State v. Kelly*, Franklin App. No. 02AP-195, 2002-Ohio05797, at ¶ 26, motion for delayed appeal denied, 98 Ohio St.3d 1459, 2003-Ohio-644, reconsideration denied, 98 Ohio St.3d 1516, 2003-Ohio-1572. *See State v. Peagler* (1996), 76 Ohio St.3d 496, 499, 668 N.E.2d 489 ("[g]enerally, an appellate court will not consider any error that counsel could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court").

Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Nevertheless, even if a defendant satisfies the requirements of Crim.R. 52(B), "Crim.R. 52(B) does not demand that an appellate court correct it. Crim.R. 52(B) states only that a reviewing court 'may' notice plain forfeited errors; a court is not obliged to correct them. [The Ohio Supreme Court] has acknowledged the discretionary aspect of Crim.R. 52(B) by admonishing courts to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240, quoting *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. An alleged error is plain error only if, " 'but for the error, the outcome of the trial clearly would have been otherwise.' " *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 108, reconsideration denied, 96 Ohio St.3d 1441, 2002-Ohio-3344, *certiorari denied*, 537 U.S. 1023, 123 S.Ct. 533, 154 L.Ed.2d 433, quoting *Long, supra*, at 91, 372 N.E.2d 804, paragraph two of the syllabus. Here, even if the testimony were improperly admitted, Pierce fails to demonstrate the outcome of the trial clearly would have been different had the challenged testimony been excluded, given that the attendance of Schwiebert and Cornell at the hearing did not produce an identification that was unreliable under the totality of the circumstances.

The reliability of identification is assessed by considering the witness's opportunity to view the defendant at the time of the incident, the witness's degree of attention, the accuracy of the witness's prior description of the suspect, the witness's certainty, and the length of time which elapsed between the crime and the identification. *Id*.

In her testimony, Schwiebert testified that she was able to view her attacker's

15

Under such circumstances,

> [a] stay merely would prolong federal habeas review to no avail, contravening AEDPA's goal of "finality and speedy resolution of federal petitions."

*Id.* at 479-80, citing *Rhines v. Weber, supra*, 125 S.Ct. at 1535. In sum, this Court concludes that granting a stay of proceedings so that petitioner may return to the state courts to exhaust claim one is not appropriate in view of *Rhines, supra*.

However, on August 3, 2005, petitioner also requested a stay of proceedings so that he may file a delayed petition for post conviction relief with the state trial court in order to exhaust "an additional claim of ineffective assistance of trial counsel." *Motion for Stay*, Doc. No. 17. Petitioner does not provide any further specificity regarding his intended ineffective assistance of trial counsel claim, nor does petitioner indicate whether or not he has yet initiated a delayed petition for post

---

whole body and face as he was coming toward her. She testified that nothing obstructed her view of him. (Tr. Vol.III, 345.) Schwiebert testified at the time of the attack she was "as close as from me sitting in the passenger seat of a car to the front of the car, and then when I actually got out of the car, I mean, I was physically touching him, wrestling with him." (Tr. Vol.III, 344-345.) Schwiebert testified that from the time she first saw the attacker until he ran off, approximately three to five minutes had elapsed. (Tr. Vol.III, 346.) When Schwiebert and Cornell viewed Pierce for the first time they both were certain he was the man who had attacked them. (Tr. Vol.IV, 391.) Given the totality of the circumstances, the trial court did not err in allowing the identification testimony. There is always a certain amount of suggestiveness in every confrontation, but the issue is whether the identification procedures give rise to a substantial likelihood of misidentification. *State v. Croomes* (June 11, 1991), Franklin App. No. 90AP-1282, cause dismissed, 62 Ohio St.3d 1401, 577 N.E.2d 62. The fifth assignment of error is overruled.

Exhibit 38 to Return of Writ. The decision of the state appellate court is presumed to be correct in federal habeas corpus review. 28 U.S.C. §2254(d), (e); *see Williams v. Taylor*, 529 U.S. 362 (2000).

16

conviction relief in the state courts. *See id.* Respondent opposes petitioner's request, arguing that any amendment of the petition at this time would be untimely under 28 U.S.C. §2244(d).

In *Mayle v. Felix*, – U.S. –, 125 S.Ct. 2562 (2005), the Supreme Court held that, under Federal Rule of Civil Procedure 15, new and otherwise time-barred claims presented in a request to amend the petition will relate back to the filing of the initial federal habeas corpus petition, "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts." *Id*., at 2574. As discussed, *supra*, the statute of limitations has now expired. Further, petitioner has failed to provide any specificity regarding his intended additional ineffective assistance of counsel claim. This Court is therefore unable to determine whether petitioner's intended claim is "tied to a common core of operative facts" to the claims already presented in petitioner's initial and amended habeas corpus petition.

> As the Supreme Court recently made crystal clear, *see Mayle*, 125 S.Ct. at 2570, a petitioner does not satisfy the Rule 15 "relation back" standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance. *See, e.g., Davenport v. United States*, 217 F.3d 1341, 1346 (11th Cir.2000); *Duffus*, 174 F.3d at 337.

*United States v. Ciampi*, 419 F.3d 20, 24 (6th Cir. 2005)(footnote omitted).

Petitioner's request for a stay of proceedings, Doc. No. 17, is therefore **DENIED**. Additionally, and for all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the

objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation.  See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


January 18, 2006                                         *s/Norah McCann King*
                                                          Norah McCann King
                                                      United States Magistrate Judge


18